**THEIDA SALAZAR, ESQ.** SBN: 295547
**JONATHAN D. EVANS, ESQ.** SBN: 302887
**SALAZAR EVANS LLP**
117 E. Colorado Boulevard
Pasadena, California 91105
P: 818.433.7290
F: 818.436.4009
E: salazarlawgroup@gmail.com
E: evansatlaw@gmail.com
*Attorneys for Plaintiff*
**LAWRENCE A. KATZ, ESQ.** NJ State Bar No. 027051988
Pro Hac Vice to be applied for
1814 E. Route # 70 – Suite # 321
Cherry Hill, NJ 08003
T: (856) 652-2000
F: (856) 375-1010
E: lakatz@lentolawgroup.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIAN E. GODAU,<br><br>Plaintiff,<br><br>v.<br><br>THE YOUNG AMERICANS, INC., d/b/a "THE YOUNG AMERICANS COLLEGE OF THE PERFORMING ARTS"; KISHA ANGELA BASHKIHARATEE; LEIF GREEN, TALYA FRANKLIN; DOES 1-10, and ROES 1-10,<br><br>Defendants. | Civil Action No.: _____<br><br>HON:_____<br><br>**COMPLAINT AND JURY DEMAND** |

## COMPLAINT AND JURY DEMAND

*This action alleges blatant violations of Title IX and the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States. This cause arises from a young college woman's sudden and unexpected dismissal from her university on allegations of sexual misconduct, with absolutely no understanding of the factual basis for said allegations and having been afforded absolutely no due process under Title IX whatsoever.*

Plaintiff, LILLIAN E. GODAU, by and through her attorneys, Lento Law Group, P.C., and by way of Complaint, brings this action for damages and other legal and equitable relief against Defendants THE YOUNG AMERICANS, INC., doing business as, "THE YOUNG AMERICANS COLLEGE OF THE PERFORMING ARTS", KISHA ANGELA BASHKIHARATEE, LEIF GREEN, TALYA FRANKLIN, JOHN/JANE DOES 1-10, and ABC ENTITIES 1-10, alleging as follows:

## INTRODUCTION

1.    In its Academic Catalog, the Young Americans College of the Performing Arts has a "Student Fairness" policy which provides, in pertinent part, as follows:

> All YACPA faculty and staff treat each student equally regardless of academic standing or ability. Every student will be given the necessary tools to succeed both in the classroom and the rehearsal studio.

2.    The Academic Catalog also has a Title IX policy, which provides as follows:

> The Young Americans College of the Performing Arts does not discriminate on the basis of race, gender, sexual orientation, disability, national origin, ethnicity, religious practices, or political beliefs in any of its policies and procedures provided the student is of eligible and legal standing.

3.    Despite the Young Americans College of the Performing Arts' stated policies of equality and non-discrimination on paper, in practice, however, at least with respect to Plaintiff, a young student formerly attending the Young Americans College of the Performing Arts, such policies were nonexistent and the unequal treatment and sex-based discrimination Plaintiff faced, particularly in violation of Title IX, ran rampant.

## JURISDICTION AND VENUE

4.      Plaintiff brings this action pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* (collectively, "Title IX"), as more fully set forth herein.

5.      This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

6.      This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related to the Title IX claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

7.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as, upon information and belief, all Defendants reside in California, with at least one Defendant in this district, and the events giving rise to Plaintiff's claims as complained of herein occurred within this district.

## PARTIES

8.      At all times relevant hereto, Plaintiff LILLIAN E. GODAU, is an adult resident citizen of the County of Oakland, State of Michigan, with a residential address for service of process being 308 N. Alexander Avenue, Royal Oak, Michigan 48067.

9.      At all times relevant hereto, Defendant THE YOUNG AMERICANS, INC., is a domestic, non-profit corporation, duly incorporated under the laws of the State of California, with a principal address within the County of Riverside, and located at 1112 Olympic Drive, Corona, California 92881; and with a registered agent for service

of process indicated, per the California Secretary of State online Business Search, to be Phil Lisle servable at the aforesaid principal address.

10.    At all times relevant hereto, Defendant THE YOUNG AMERICANS, INC., does business within the State of California, as "THE YOUNG AMERICANS COLLEGE OF THE PERFORMING ARTS," a private performing arts university and recipient of federal funds, located at 1112 Olympic Drive, Corona, California 92881.

11.    At all times relevant hereto, Defendant KISHA ANGELA BASHKIHARATEE, is, upon information and belief, an adult resident citizen of San Bernardino County, California, with a residential address for service of process believed to be 24691 Stewart Street, Loma Linda, California 92354.

12.    At all times relevant hereto, Defendant KISHA ANGELA BASHKIHARATEE, was, and so remains, the Dean of Students at The Young Americans College of the Performing Arts.

13.    At all times relevant hereto, Defendant LEIF GREEN, is, upon information and belief, an adult resident citizen of Los Angeles County, California, with a residential address for service of process believed to be 13738 Burbank Blvd., Apt. 8, Sherman Oaks, California 91401.

14.    At all times relevant hereto, Defendant LEIF GREEN, was, and so remains, the Title IX Coordinator for The Young Americans College of the Performing Arts.

15.    At all times relevant hereto, Defendant TALYA FRANKLIN, is, upon information and belief, an adult resident citizen of Riverside County, California, with

a residential address for service of process believed to be 53 Plaza Avila, Lake Elsinore, California 92532.

16.    At all times relevant hereto, Defendant TALYA FRANKLIN, was the Vice President of Finance, Administration, & HR with College President of The Young Americans College of the Performing Arts, and is currently College President.

## APPLICABLE LAW AND POLICY

Applicable Federal Law

17.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states in relevant part that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[...]

18.    Title IX is implemented through the Code of Federal Regulations. *See* 34 C.F.R. Part 106.

19.    Specifically, 34 C.F.R. § 106.2(g) defines "Federal financial assistance" as:

> [...] any of the following, when authorized or extended under a law administered by the Department:
>
> (1) A grant or loan of Federal financial assistance, including funds made available for:
>
> > (i) The acquisition, construction, renovation, restoration, or repair of a building or facility or any portion thereof; and
> >
> > (ii) Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or

    extended directly to such students for payment to
    that entity.

  (2) A grant of Federal real or personal property or any
    interest therein, including surplus property, and the
    proceeds of the sale or transfer of such property, if the
    Federal share of the fair market value of the property is
    not, upon such sale or transfer, properly accounted for
    to the Federal Government.

  (3) Provision of the services of Federal personnel.

  (4) Sale or lease of Federal property or any interest therein
    at nominal consideration, or at consideration reduced
    for the purpose of assisting the recipient or in
    recognition of public interest to be served thereby, or
    permission to use Federal property or any interest
    therein without consideration.

  (5) Any other contract, agreement, or arrangement which
    has as one of its purposes the provision of assistance to
    any education program or activity, except a contract of
    insurance or guaranty.

20.  Further, under Title IX, a recipient of federal funds must implement a formal

grievance process for formal complaints of sexual harassment.

21.  As an initial matter, the term "sexual harassment" is a term of art under Title

IX, and is defined at 34 C.F.R. § 106.30 as:

    Sexual harassment means conduct on the basis of sex that
    satisfies one or more of the following:

    (1) An employee of the recipient conditioning the provision
    of an aid, benefit, or service of the recipient on an
    individual's participation in unwelcome sexual conduct;

    (2) Unwelcome conduct determined by a reasonable person
    to be so severe, pervasive, and objectively offensive that it
    effectively denies a person equal access to the recipient's
    education program or activity; or

(3) "Sexual assault" as defined in 20 U.S.C. 1092(f)(6)(A)(v),
"dating violence" as defined in 34 U.S.C. 12291(a)(10),
"domestic violence" as defined in 34 U.S.C. 12291(a)(8), or
"stalking" as defined in 34 U.S.C. 12291(a)(30).

22.    34 C.F.R. § 106.45 outlines the grievance process for formal complaints of
sexual harassment such as that defined above, and importantly, provides that, "a
recipient's grievance process <u>must</u> comply with the requirements of this section," and
that, "Any provisions, rules, or practices other than those required by this section...
must apply equally to both parties," the complainant and the respondent. 34 C.F.R. §
106.45(b),

23.    34 C.F.R. § 106.45 provides some crucial protections for respondents (i.e., "the
accused") in Title IX matters.

24.    Some of the protections afforded respondents under 34 C.F.R. § 106.45, include:

a. The requirement that complainants and respondents be treated
equitably (34 C.F.R. § 106.45(b)(1)(i));

b. The requirement of an objective evaluation of all relevant evidence, both
inculpatory and exculpatory (34 C.F.R. § 106.45(b)(1)(ii)); and

c. The requirement that Title IX Coordinators, investigators, decision-
makers, or the like, be free of conflicts of interest or bias for or against
complainants or respondents generally (34 C.F.R. § 106.45(b)(1)(iii));

25.    However, perhaps one of the most important protections afforded respondents
under Title IX, is that a recipient's formal grievance procedure <u>must</u>:

> Include a presumption that the respondent is not
> responsible for the alleged conduct until a determination
> regarding responsibility is made at the conclusion of the
> grievance process.
> 34 C.F.R. § 106.45(b)(1)(iv)

26.    Importantly, upon receipt of a formal complaint, a recipient <u>must</u> provide
written notice of the allegations to the parties who are known, including, to the
respondent, and this notice must provide, not only notice of the specific allegations
against the respondent, but notice of the recipient's grievance process as well. 34
C.F.R. § 106.45(b)(2)

27.    Per 34 C.F.R. § 106.45(b)(3)(i), a recipient <u>must</u> investigate the allegations in
a formal complaint.

28.    In so investigating a formal complaint, the recipient <u>must</u>, and among other
things, "Provide an equal opportunity for the parties to present witnesses, including
fact and expert witnesses, and other inculpatory and exculpatory evidence," (34
C.F.R. § 106.45(b)(5)(ii)), "Provide the parties with the same opportunities to have
others present during any grievance proceeding, including... the advisor of their
choice, who may be, but is not required to be, an attorney," (34 C.F.R. §
106.45(b)(5)(iv)), and "Provide both parties an equal opportunity to inspect and
review any evidence obtained as part of the investigation that is directly related to
the allegations raised in the formal complaint..." (34 C.F.R. § 106.45(b)(5)(vi)).

29.    Following an investigation of a formal complaint, an investigative report must
be generated which fairly summarizes relevant evidence, and said report must be

sent to the parties and their advisors at least ten (10) days prior to a hearing. 34

C.F.R. § 106.45(b)(5)(vii).

30.    Importantly, regarding hearings, postsecondary institutions – in other words,

colleges or universities such as The Young Americans College of the Performing Arts

– must provide for a live hearing in their grievance process. 34 C.F.R. § 106.45(b)(6).

31.    Finally, following the hearing, a determination regarding responsibility must

be made, and that determination, which must be in writing, must include, among

other things, the allegations against the respondent, the procedural steps taken

throughout the formal grievance process, the findings of facts supporting the

determination, conclusions regarding the application of the specific recipient's code

of conduct to the facts, and the recipient's procedures and bases for appeal of the

determination. 34 C.F.R. § 106.45(b)(7).

Applicable School Policy

32.    Within The Young Americans College of the Performing Arts' Academic

Catalog, "Section F. The Process: Initial Steps and Investigative Procedures"

(beginning on page 70 of the Academic Catalog) outlines the steps that the Title IX

Investigator must follow, following their receipt of a formal complaint of alleged

sexual misconduct.

33.    Specifically, Paragraph 2(b) on page 72 states:

> The Title IX investigator shall provide written notice to the
> respondent that includes the identities of the parties
> involved, the specific section of the code of conduct
> allegedly violated, the precise conduct allegedly
> constituting the potential violation, and the date and
> location of the alleged incident. Notice must be provided

with sufficient time for the respondent to prepare a response prior to any interview or meeting.

34.     This policy is consistent with the provisions of 34 C.F.R. § 106.45(b) as aforecited.

## GENERAL ALLEGATIONS

35.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

36.     Plaintiff, LILLIAN E. GODAU (hereinafter, "Lily"), was a student at The Young Americans College of the Performing Arts, having first began attending in August of 2022.

37.     On or about October 17, 2022, Lily was on campus in a classroom with her roommate, nonparty Wendy Woerner.

38.     Lily and Ms. Woerner had arrived on campus around 12:00 noon that day.

39.     Lily had a class from 1:45PM to 2:45PM, and afterwards, another class at 3:30PM.

40.     Near the beginning of their break between classes, Lily and Ms. Woerner moved to another room on campus due to their needing some space from their other classmates to concentrate and get their work done.

41.     As Lily and Ms. Woerner walked from one building to the other, classmate and nonparty Emi Rose Barnett yelled to Lily from across the parking lot, saying that she and the group of students she was with wanted to talk to Lily.

42.    However, as Lily was experiencing some significant mental health issues at the time, she did not want to engage with the group.

43.    Even so, Lily was then followed into the building by Ms. Barnett, and fellow students and non-parties Logan Cabieles and Courtney Moreno.

44.    Mr. Cabieles was snapping his fingers and whistling at Lily to get her attention.

45.    He then proceeded to holler at Lily, telling her that she's avoiding contact, that they wanted to talk to her, and that they hope she enjoys being kicked out of school.

46.    Afterward, the group of students departed, and Lily and Ms. Woerner found a quiet place to decompress and for Lily to calm down from the verbal accosting she had just received.

47.    Another student, non-party Patricia Barrett, arrived and attempted to comfort Lily.

48.    Lily then proceeded to call her mother and inform her about the incident.

49.    Mrs. Godau was concerned for Lily's well-being and she, in turn, contacted Defendant KISHA ANGELA BASHKIHARATEE (hereinafter, "Dr. B."), the school's Dean of Students, to express her concerns.

50.    Dr. B. then proceeded to text Lily, asking her to meet around 3:45PM that day, and subsequently, Lily did so.

51.    Lily spoke to Dr. B. about the issues she was having with some of her fellow students and how they were significant mental health triggers for her given her anxiety.

52.     Dr. B. indicated that she would like to schedule a meeting on October 19, 2022, at 1:30PM, with the involved parties to attempt to resolve whatever interpersonal issues existed.

53.     Upon the conclusion of the meeting with Dr. B., Lily went home for the day.

54.     The next day, on October 18, 2022, Lily attended classes for the day and went home afterward, without incident.

55.     The following day, on October 19, 2022, Lily again reported for her classes.

56.     At 1:30PM she reported to the meeting that Dr. B. had scheduled two days earlier on the 17th, as aforesaid.

57.     Originally, four other students in addition to Lily were scheduled to attend said meeting; however, only two students showed up.

58.     During this meeting, Dr. B. discussed with Lily and the other two students the interpersonal issues that had been going on.

59.     Specifically, the meeting appeared to be nothing more than an opportunity to give the two students a forum to verbally attack Lily, without regards to her feelings or mental health, and at no time were allegations of sexual misconduct brought up.

60.     Throughout the meeting, Lily was not given an opportunity to speak, allowing the other students to essentially tell their side of the story while dismissing Lily's concerns outright, and invalidating her feelings entirely.

61.     After the meeting, at approximately 3:00PM, Dr. B. informed Lily that Defendant TALYA FRANKLIN ("Ms. Franklin") – current College President, but then the VP of Finance, Administration, & HR – wanted to speak with her.

62.    No information regarding what the discussion would be about was provided to Lily.

63.    Nonetheless, Lily proceeded to report to Ms. Franklin's office, only to find that Ms. Franklin was not there.

64.    Consequently, Dr. B. then instructed Lily to wait for Ms. Franklin in the student lounge.

65.    She waited for roughly 15-20 minutes, but Ms. Franklin never appeared.

66.    Given that Lily relies on her classmates for rides to and from school, she could wait for Ms. Franklin no longer, and had to leave the campus for the day.

67.    Later that evening, given how poorly that afternoon's meeting with Dr. B. and the two students had gone, Lily, after seeking the counsel of her mother, made the decision to withdraw from the school.

68.    Mrs. Godau sent an email to the school at 7:22EST (4:22PM PST) informing the school of Lily's intent to withdraw.

69.    At 5:08PM, Lily received an email from Ms. Franklin stating that she was still seeking to meet with her following their failure to connect that day, given that Ms. Franklin had left for lunch at the time Lily was waiting to meet with her, and that the new proposed meeting would now take place sometime the following day, on October 20, 2022; however, Ms. Franklin provided no time for the meeting in her email, nor, once again, was Lily informed as to the topic of the meeting.

70.    As Lily had already withdrawn from classes on October 19, 2022, she did not report to campus the following day, and thus, the meeting with Ms. Franklin did not occur.

71.    On October 20, 2022, at 11:20AM, Lily received an email from Dr. B. with a Letter of Expulsion attached. A true and correct copy of this letter is annexed hereto as **EXHIBIT "A"**.

72.    Understandably, Lily was quite blindsided by the contents of the Letter of Expulsion, which indicated that, on October 17, 2022, the school had received a formal complaint against Lily, alleging sexual misconduct.

73.    The letter went on to indicate that, "After conducting a formal investigation of the sexual misconduct, the findings indicate[d] that [Lily] [had] egregiously violated the Young American's Sexual Misconduct, Sexual Violence, Gender-Based Discrimination, and Retaliation Policy," as outlined in the Academic Catalog.

74.    This was the first Lily had ever been informed of such allegations, and understandably, having committed no such sexual misconduct, she was abhorred by the baseless and malign accusations.

75.    Equally as disturbing was the manner in which the school handled the situation, affording Lily no process whatsoever, only informing her for the first time of the nature of the accusations against her in the context of Letter of Expulsion, in violation, not only of the school's own academic policies, but in violation of Title IX as well.

76.     First and foremost, per the school's own stated policy in its Academic Catalog, Lily was denied procedural due process with regards to the initial investigatory steps taken by the school.

77.     Specifically, "Section F. The Process: Initial Steps and Investigative Procedures" outlines the steps that the Title IX Investigator must follow, following their receipt of a report of alleged sexual misconduct.

78.     In Lily's case, the outlined steps were not followed, as Lily was not provided with the required written Notice of Allegations, specifically, not being informed of the identities of the parties involved, the specific section of the code of conduct allegedly violated, the conduct constituting the alleged violation, nor the date and location of the alleged incident.

79.     Similarly, having received no such Notice of Allegations, Lily was not apprised of the allegations against her, and thus, was denied the opportunity to prepare a defense.

80.     It is now apparent that the meeting that was to occur on October 19, 2022, with Defendant Talya Franklin, and which was subsequently rescheduled for the following day, but which ultimately did not occur, was an initial interview or meeting as contemplated by Section F. of the school's Academic Catalog; however, the attempts by the school to conduct such a meeting without first providing Lily a written Notice of Allegations and further, without providing her sufficient time to prepare a response, is in clear violation of both the school's own policy and 34 CFR 106.45(b)(2), and thus, a clear deprivation of Lily's procedural due process rights under Title IX.

81.    This failure was not, however, the only such violation by The Young Americans

College of the Performing Arts.

82.    Paragraph 4(a) under Section F. of the Academic Catalog (p. 72), provides as

follows:

> The Title IX Investigator conducts interviews with all
> parties involved, including any witnesses in a prompt, fair,
> and impartial manner. Once the investigation of the
> Complaint is completed and the investigative report
> prepared by the Investigator is given to the Title IX
> committee, both the Respondent and Complainant will be
> notified of the findings by the Investigator.

83.    Similar investigation-stage requirements are present in Paragraphs

4(b)-(d).

84.    These provisions are consistent with 34 C.F.R. § 106.45(b)(5) as aforecited,

which outline the requirements of a recipient school's investigatory process.

85.    Unfortunately, none of the procedural safeguards afforded both by the school's

own on-paper policy and by Title IX were provided to Lily.

86.    It is undeniable that your institution conducted a formal investigation into the

allegations against Lily, as Dr. B. herself states as much in her Expulsion Letter of

October 20, 2022 (**Ex. "A"**), stating, "After conducting a *formal investigation* of the

sexual misconduct" (not the, "*alleged*" sexual misconduct, it should be noted), "the

findings indicate that you have egregiously violated the Young American's Sexual

Misconduct, Sexual Violence, Gender-Based Discrimination, and Retaliation Policy

outlined in the Academic Catalog."

87.    Despite a formal investigation clearly having been undertaken, by the school's
own admission, Lily was wholly denied the opportunity to participate in the formal
grievance process, as is required under both your Academic Catalog and 34 CFR
106.45(b).

88.    Worse still, she was completely unaware of any such investigation, and
completely unaware of the nature of the allegations against her up until the very
moment she received the Expulsion Letter informing her, not only of the
investigation, but of the very fact that there had been allegations of sexual
misconduct levied against her in the first place.

89.    She was not afforded an equal opportunity to participate in the investigation.

90.    She was not afforded an equal opportunity to participate in any live hearing.

91.    She was not afforded an equal opportunity to present or examine witnesses.

92.    She was not afforded an equal opportunity to present or examine evidence.

93.    She was not afforded an equal opportunity to be accompanied by an advisor
throughout any step in the investigatory process, as, again, she was left completely
in the dark by the school until the very moment of her expulsion.

94.    Even with respect to the school having apparently sustained the allegations
against Lily, it nonetheless failed to comply with both its own policy requirements
and the provisions of Title IX with respect to determinations of responsibility.

95.    Specifically, Section F. of the Academic Catalog, Paragraph 4(d), provides that:

> If the allegations are sustained and the College intends to
> impose a penalty on the Respondent, College shall notify
> the Respondent by way of a "Charging Notice." The
> Charging Notice is a written notice of any proposed

> penalty, the reasons for the penalty, the provisions of the
> Policy alleged to have been violated, copies of the materials
> upon which the proposed penalty is based, the right to
> appeal, and copies of the Procedural Rules in the even an
> appeal is filed.

96.     These provisions are consistent with the requirements of 34 CFR 106.45(b)(7)

under Title IX regarding the provision of a written determination notice to the

Respondent post-investigation and post-hearing.

97.     At no time was Lily provided with a Charging Notice.

98.     The closest thing to such a document that Lily was provided with, was the

October 20, 2022, Expulsion Letter; however, even this letter was not compliant with

the requirements of Section F., Paragraph 4(d) of the Academic Catalog, nor with the

requirements of 34 CFR 106.45(b)(7), in that, while it did inform Lily of her right to

appeal the school's determination, having previously failed to provide her with a

Notice of Allegations or involve her in the investigation in any manner whatsoever,

it failed to provide her with the reasons for the penalty, and failed to provide copies

of the materials upon which the penalty was based.

99.     The school's failure to provide these materials substantially limited Lily's

ability to appeal the school's determination, for, how can she be expected to

competently appeal such a determination when, not only does she not know what

materials were relied upon by the school in coming to a determination of

responsibility, but also when she is completely unaware of the very charges against

her in the first place?

100.    Importantly, there is nothing in the school's Academic Catalog which indicates
that the school can skip the aforementioned procedural safeguards, and similarly, 34
CFR 106.44(b)(1) makes clear that, "In response to a formal complaint [of sexual
harassment], a recipient <u>must</u> follow a grievance process that complies with § 106.45."
(Emphasis added).

101.    On or about January 18, 2023, my office provided correspondence via email to
Dr. B. outlining the aforesaid violations by The Young Americans College of the
Performing Arts of both their internal Title IX policy and of Title IX itself, and
indicated a desire by Plaintiff to resolve this matter informally in lieu of litigation.

102.    To date, however, neither Dr. B. nor anyone from the school has responded to
this January 18th correspondence. A true and correct copy of this correspondence and
the email transmitting it to Dr. B. are collectively annexed hereto as **EXHIBIT "B"**.

103.    All of the aforesaid failures of the school with respect to its handling of the
formal grievance process against Lily are attributable to Defendants Dr. B., Ms. Talya
Franklin, and Leif Green – the school's Title IX Coordinator – as each were, or should
have been, intimately involved in the formal grievance process.

104.    Specifically with reference to Title IX Coordinator Defendant Leif Green,
Plaintiff is without sufficient information at present to know precisely what level of
involvement Mr. Green actually had in the formal grievance process instituted
against her, however, two options appear evident: either (1) Mr. Green was involved
in the process and roundly failed in his duties as Title IX Coordinator to provide Lily
a full and fair process per the requirements of both the school's own Title IX policy

and Title IX itself, or (2) Mr. Green was not involved at all – despite the mandatory reporter obligations of Defendants Dr. B. and Talya Franklin – which could account for the utter lack of process afforded Lily.

105.    In either event, it is clear that Lily was denied the due process to which she was entitled, both under Title IX and under the school's own policy, and suffered greatly as a result.

### COUNT I
### <u>VIOLATIONS OF TITLE IX</u>
### As to All Defendants

106.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

107.    At all time relevant herein, Plaintiff was a student at The Young Americans College of the Performing Arts, a private post-secondary educational institution and recipient of federal funds.

108.    As a recipient of federal funds, The Young Americans College of the Performing Arts was required to have a grievance process for addressing formal complaints of sexual harassment, such as the formal complaint of sexual misconduct levied against Plaintiff, that complied with the requirements of Title IX and its implementing regulations, and specifically, with 34 C.F.R. § 106.45.

109.    Defendants Dr. B. as Dean of Students, Ms. Talya Franklin as Vice President of Finance, Administration, & Human Resources, and Leif Green as Title IX Coordinator, individually and collectively, were, or should have been, intimately involved in the formal grievance process, and therefore had, or should have had, a

duty to ensure compliance with the school's obligations under Title IX and its implementing regulations.

110. Specifically, and among other things, the Defendants individually and collectively had a duty under:

    a. 34 C.F.R. § 106.45(b)(1)(i), to treat complainants and respondents equitably by following a grievance process that complies with 34 C.F.R. § 106.45 *before* the imposition of any disciplinary sanction, however, they failed to do so;

    b. 34 C.F.R. § 106.45(b)(1)(ii), to require an objective evaluation of all relevant evidence, both inculpatory and exculpatory, however, they failed to do so;

    c. 34 C.F.R. § 106.45(b)(1)(iv), to presume that the respondent – in this case, Plaintiff – was not responsible for the alleged conduct until a determination regarding responsibility could be made at the conclusion of the grievance process, however, they failed to do so;

    d. 34 C.F.R. § 106.45(b)(1)(viii), to explain the procedures and permissible bases for respondent to appeal an adverse determination, however, they failed to do so;

    e. 34 C.F.R. § 106.45(b)(2)(i), to provide, upon receipt of a formal complaint, written notice to respondent of

        (1)    the grievance process,

        (2)    the allegations against the respondent,

(3)    the fact that the respondent is presumed not responsible until a determination of responsibility is made at the conclusion of the grievance process,

(4)    the fact that the respondent may have an advisor of their choice, and

(5)    the fact that the respondent may inspect and review evidence,

however, they failed to provide such a written notice;

f.  34 C.F.R. § 106.45(b)(5)(ii), to provide an equal opportunity for the parties to present witnesses, including fact and expert witnesses, and other inculpatory and exculpatory evidence, however, they failed to do so;

g.  34 C.F.R. § 106.45(b)(5)(iii), to not restrict either party's ability to discuss the allegations under investigation, or as relevant here, to gather and present relevant evidence, however, they failed to do so;

h.  34 C.F.R. § 106.45(b)(5)(iv) & (v), to provide the respondent with written notice of all hearings, investigative interviews, and other meetings, and provide respondent with the opportunity to be accompanied by their advisor to same, however, they failed to do so;

i.  34 C.F.R. § 106.45(b)(5)(vi), to provide respondent an equal opportunity to inspect and review any evidence obtained as part of the investigation,

and send such evidence to the party's advisor, however, they failed to do so;

j.  34 C.F.R. § 106.45(b)(5)(ii), to create an investigative report fairly summarizing the relevant evidence and to provide same to the respondent and respondent's advisor at least ten (10) days prior to a hearing, such that they can review same and provide a written response, however, they failed to do so;

k.  34 C.F.R. § 106.45(b)(6)(i), to provide for a live hearing at which the respondent's advisor is permitted to question the complainant and any witnesses, however they failed to do so;

l.  34 C.F.R. § 106.45(b)(7), to issue a written determination regarding responsibility which must include, among other things,

(1)  identification of the allegations potentially constituting sexual harassment,

(2)  a description of the procedural steps taken throughout the formal grievance process,

(3)  findings of fact supporting the determination,

(4)  conclusions regarding the application of the school's code of conduct to the facts, and

(5)  the school's procedures and permissible bases for the respondent to appeal,

however, they failed to provide such a written determination; and

m. 34 C.F.R. § 106.45(b)(8), to offer respondent an opportunity to appeal a determination of responsibility, however they failed to do so.

111.    Under Title IX, a school must respond promptly to sexual harassment in a manner that is not deliberately indifferent, which means in a way that is not clearly unreasonable in light of known circumstances.

112.    Each of the failures listed above, are independent violations of the provisions of Title IX and its implementing regulations, however, taking these individual failures together clearly illustrates the enormity of the dereliction of duty on the part of the Defendants named herein and their abject and deliberate indifference to the rights of Plaintiff as arising under Title IX.

113.    By failing to provide any one of the required protections afforded to respondents under Title IX, as outlined above, the Defendants named herein denied Plaintiff as a Title IX respondent full and fair due process, however, by failing to provide all of these protections simultaneously, the Defendants responded in a manner that was clearly unreasonable in light of the known circumstances.

114.    As a respondent in a postsecondary educational institution's formal Title IX grievance process – a fact that was not even made known to Plaintiff until after her dismissal following a determination of responsibility – Plaintiff was within the class of persons whom Title IX and its implementing regulations were intended to protect.

115.    Further, a respondent's denial of due process during a formal Title IX grievance process is precisely among the types of harm that Title IX and its

implementing regulations were intended to prevent, as evidenced by the numerous procedural safeguards and protections afforded respondents.

116.    Even so, Plaintiff was wholly denied such procedural safeguards and protections, as an individual and collective failure of all Defendants named herein.

117.    As a direct and proximate result of the failures, as aforesaid, of all Defendants named herein, Plaintiff was denied her procedural due process rights as arising under Title IX and its implementing regulations, was subjected to an incomplete and unfair procedure in that she was afforded no procedure at all, and was subsequently imposed with the disciplinary sanction of outright dismissal, unjustly and in violation of Title IX as aforesaid, causing Plaintiff to suffer significant damages, including, but not limited to, extreme emotional distress, and other economic and non-economic damages in an amount to be determined at trial.

## COUNT II
## BREACH OF CONTRACT
### As to Defendant The Young Americans, Inc.
### d/b/a "The Young Americans College of the Performing Arts"

118.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

119.    Plaintiff contracted with Defendant The Young Americans, Inc. doing business as The Young Americans College of the Performing Arts, for the provision of a certain educational program and educational services in connection therewith, at the Defendant's postsecondary educational institution.

120.    Plaintiff fulfilled her obligation pursuant to said contract by tendering payment to the Defendant, whether personally or through a third-party payor, for the provision of said educational program and services.

121.    Plaintiff further fulfilled her obligation pursuant to said contract by performing thereunder, in that she attended to the academic requirements of the educational program, attended classes, and performed the required coursework.

122.    Defendant, The Young Americans, Inc. doing business as The Young Americans College of the Performing Arts, however, through its employees, agents, workmen, authorities, and administrators, has breached its contract with the Plaintiff in that it has not fully performed, has breached its own expressed policies, and has thereby misrepresented material contract terms to Plaintiff.

123.    Specifically, said Defendant has not fully performed in that it has failed to tender the educational program for which Plaintiff contracted.

124.    Specifically, all of the various Title IX policies and procedures promulgated by said Defendant in their Academic Catalog, including those cited earlier herein and others, constitute the written terms of the bargain as between Plaintiff and Defendant – in other words, these provisions collectively are the contract terms as between Plaintiff and Defendant, outlining each party's obligations to the other.

125.    In enrolling at The Young Americans College of the Performing Arts and paying tuition therefor, Plaintiff accepted the terms outlined in the Academic Catalog and understood same to be part and parcel to the bargain as between she and said Defendant.

126. Unfortunately, as Plaintiff came to learn, the on-paper terms of the bargain as manifested by the Title IX policy provisions within the Academic Catalog, did not reflect the true terms of the bargain in practice, as said Defendant regularly failed to abide by its own Title IX policies and procedures.

127. Specifically, "Section F. The Process: Initial Steps and Investigative Procedures" of the Academic Catalog, outlines the steps that the Title IX Investigator must follow, following their receipt of a report of alleged sexual misconduct.

128. In Plaintiff's case, the outlined steps were not followed, as she was not provided with the required written Notice of Allegations, specifically, not being informed of the identities of the parties involved, the specific section of the code of conduct allegedly violated, the conduct constituting the alleged violation, nor the date and location of the alleged incident.

129. Similarly, having received no such Notice of Allegations, Plaintiff was not apprised of the allegations against her, and thus, was denied the opportunity to prepare a defense.

130. Further, Paragraph 4(a) under Section F. of the Academic Catalog (p. 72), provides as follows:

> The Title IX Investigator conducts interviews with all parties involved, including any witnesses in a prompt, fair, and impartial manner. Once the investigation of the Complaint is completed and the investigative report prepared by the Investigator is given to the Title IX committee, both the Respondent and Complainant will be notified of the findings by the Investigator.

131. Similar investigation-stage requirements are present in Paragraphs 4(b)-(d).

132.    Unfortunately, none of these procedural safeguards were provided by the Defendant to Plaintiff.

133.    Finally, the Defendant also failed, among other things, with respect to its obligations under its own policy with respect to post-determination obligations.

134.    Specifically, Section F. of the Academic Catalog, Paragraph 4(d), provides that:

> If the allegations are sustained and the College intends to impose a penalty on the Respondent, College shall notify the Respondent by way of a "Charging Notice." The Charging Notice is a written notice of any proposed penalty, the reasons for the penalty, the provisions of the Policy alleged to have been violated, copies of the materials upon which the proposed penalty is based, the right to appeal, and copies of the Procedural Rules in the even an appeal is filed.

135.    At no time was Plaintiff provided such a Charging Notice by the Defendant.

136.    Each of these failures to abide by its own Title IX policy as outlined in its Academic Catalog constitute independent breaches of said Defendant's contract with Plaintiff.

137.    Taking each of these breaches together, it is clear that not only did Defendant The Young Americans, Inc. doing business as The Young Americans College of the Performing Arts materially misrepresent its own contract terms vis-à-vis the various Title IX policies it deviated from or failed to abide by altogether, but said Defendant arbitrarily and capriciously breached its contract with Plaintiff and failed to deal in good faith, failing to provide Plaintiff the benefit of her bargain, all the while still accepting Plaintiff's tuition dollars even so.

138.    As a direct and proximate result of said Defendant's numerous breaches of its contract with Plaintiff, Plaintiff was caused to suffer significant damages, including, but not limited to, extreme emotional distress, and other economic and non-economic damages in an amount to be determined at trial.

**COUNT III**
**NEGLIGENCE/GROSS NEGLIGENCE/RECKLESSNESS**
**As to Defendants Kisha Angela Bashkiharatee, Leif Green, and Talya Franklin**

139.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

140.    All Defendants named in this Count had a duty, whether arising under common law, Title IX, its implementing regulations, or The Young Americans College of the Performing Arts' own Title IX policies, as referenced earlier herein, to provide certain procedures for the handling of formal complaints of sexual harassment.

141.    Defendant Dr. B., as Dean of Students, Leif Green as Title IX Coordinator, and Talya Franklin as Vice President of Finance, Administration, & Human Resources all had a duty, individually and collectively, to ensure that The Young Americans College of the Performing Arts was compliant with all applicable Title IX laws and policies, both external and internal, and that it provided a formal grievance process consistent therewith.

142.    As each of these Defendants are instrumental in the administration, implementation, and enforcement of such Title IX policies, the provision or non-provision of a Title IX formal grievance that is consistent with both Title IX, its

implementing regulations, and with the school's own internal policies, is each of their responsibilities, both in part and collectively.

143. Despite this duty, however, the Defendants named in this Count failed, individually and collectively, to provide a Title IX formal grievance policy consistent with law and the school's own internal policy, as complained of more fully earlier herein.

144. But-for the failure of these Defendants to provide a Title IX formal grievance policy consistent with law and the school's own internal policy, Plaintiff would not have suffered the damages herein complained of, in that she would have been afforded the procedural due process and protections she is entitled to under Title IX.

145. Further, it is reasonably foreseeable that high-level school administrators at a postsecondary educational institution who are responsible for ensuring the school's compliance with applicable Title IX laws and policies, but who fail to do so, may reasonably be subjecting the students in their charge – both complainants and respondents – to potential harm.

146. Thus, as a direct and proximate result of the failures of each of the Defendants named in this Count, and the collective failures of all said Defendants taken together, Plaintiff was afforded no due process protections as arising both under Title IX, its implementing regulations, and under the school's own internal policies, and was caused to suffer damages thereby.

147. The negligent failings of all Defendants to such an extent as was had in Plaintiff's circumstance as complained of herein, represents a lack of any care and

such an extreme departure from what a reasonable prudent person in the Defendants' position would do under the same circumstances that such failures are grossly negligent.

148.    Alternatively, and as the Court may deem appropriate, the conduct of the Defendants as aforesaid, resulting in the numerous violations of Title IX by which Plaintiff was caused to suffer harm, is conduct manifesting a culpability greater than mere negligence, as it demonstrates said Defendants' deliberate disregard to the high degree of probability that harm, such as that suffered by Plaintiff, would occur, thus warranting a grant of punitive damages.

**COUNT IV**
**NEGLIGENCE – *RESPONDEAT SUPERIOR***
**As to Defendant The Young Americans, Inc.**
**d/b/a "The Young Americans College of the Performing Arts"**

149.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

150.    Defendant The Young Americans, Inc., as owner, operator, and/or controller of the The Young Americans College of the Performing Arts, a recipient of federal funds, had a duty to ensure the school was compliant with all applicable Title IX laws and policies, both external and internal, and that it provided a formal grievance process consistent therewith.

151.    Said Defendant, at least in part, delegated this duty to its employees, agents, workmen, authorities, and/or administrators, namely, Defendants Kisha Angela Bashkiharatee, Leif Green, and Talya Franklin.

152.   At all times relevant herein, Defendants Kisha Angela Bashkiharatee, Leif
Green, and Talya Franklin, while engaging in the deliberately indifferent, negligent,
grossly negligent, and reckless conduct complained of herein, said Defendants were
acting within the course and scope of their employment with The Young Americans
College of the Performing Arts.

153.   Defendant The Young Americans, Inc. is therefore vicariously liable for the
negligent and otherwise tortious conduct of said Defendants, pursuant to the
principles of *respondeat superior*, agency, master-servant relationship, contribution,
and/or indemnification.

### COUNT V
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**As to Defendant The Young Americans, Inc.**
**d/b/a "The Young Americans College of the Performing Arts"**

154.   Plaintiff hereby repeats all of the allegations contained in the Complaint thus
far above and incorporates same as if fully set forth at length herein.

155.   Defendant The Young Americans, Inc., doing business as The Young
Americans College of the Performing Arts, had a duty , as aforesaid, whether arising
under common law, Title IX, its implementing regulations, or the school's own Title
IX policies, to adhere to the provisions contained in those sources of law and policy,
and specifically, to provide a Title IX formal grievance process consistent therewith.

156.   Further, given that the school was Plaintiff's university at the time that she
was being subjected (albeit, unbeknownst to her) to a Title IX formal grievance
process, a special relationship existed as between Plaintiff and the Defendant. *See*,
Regents of University of California v. Superior Court, 413 P.3d 656 (2023), in which

the Supreme Court of California found that special relationship exists as between a

university and its enrolled students.

157.    This special relationship gives rise to a heightened duty of care, given that

Plaintiff was a student within the school's charge.

158.    Despite this duty, however, Defendant nonetheless breach this duty of care it

owed to Plaintiff herein, as articulated more fully previously herein.

159.    This conduct of the Defendant was particularly outrageous given the severity

of the Defendant's failings.

160.    The Defendant's conduct in this manner demonstrated a reckless disregard of

the probability of causing emotional distress to the Title IX respondents subjected to

their virtually nonexistent Title IX formal grievance process, such as Plaintiff.

161.    As a direct and proximate result of the Defendant's conduct in this manner,

reckless as it was, and in breach of its owed duty of care to Plaintiff, Plaintiff was

caused to suffer, and continues to suffer, severe or extreme emotional distress.

**COUNT VI**
**TORTIOUS CONDUCT OF FICTITIOUS DEFENDANTS**
**As to Fictitious Defendants John/Jane Does 1-10 and ABC Entities 1-10**

162.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus

far above and incorporates same as if fully set forth at length herein.

163.    At all times relevant to this action, Defendants JOHN/JANE DOES 1-10 and

ABC ENTITIES 1-10, are fictitious names for individuals and entities whose

identities are unknown at present, but who constitute persons, partnerships, joint

ventures, corporations, associations, or other forms of private entities who or which

participated in the tortious actions of Defendants described herein, whether by way of their negligence or in other ways as yet undetermined.

164.    As a direct and proximate result of the negligence and/or tortious conduct of Defendants JOHN/JANE DOES 1-10 and ABC ENTITIES 1-10, Plaintiff has been caused to suffer, and in fact did suffer, significant damages.

165.    Plaintiff alleges an insufficient opportunity to determine the identity of all individuals or entities whose actions or omissions may be potentially responsible in whole or in part for the damages incurred by Plaintiff.

166.    As such, Plaintiff specifically reserves the right to name additional individuals or entities as Defendants to this action, when and if their identities become known to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, LILLIAN E. GODAU, demands judgment against Defendants, THE YOUNG AMERICANS, INC., doing business as, "THE YOUNG AMERICANS COLLEGE OF THE PERFORMING ARTS", KISHA ANGELA BASHKIHARATEE, LEIF GREEN, TALYA FRANKLIN, JOHN/JANE DOES 1-10, and ABC ENTITIES 1-10, for the following damages:

I.    For judgement against the Defendants jointly, severally, and alternatively, for general, compensatory, and punitive damages, with interest;

II.    Reasonable attorney's fees and costs of suit; and

III.    For such other further relief as the Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff

demands a trial by jury in this action of all issues so triable.


Dated: October 18, 2024                          LENTO LAW GROUP, P.C.



Theida Salazar, Esquire

SALAZAR EVANS, LLP

117 E. Colorado Boulevard

Pasadena, California  91105

P: 818.433.7290

salazarlawgroup@gmail.com

Attorney for Plaintiff




LAWRENCE A. KATZ, ESQUIRE

Pro Hac Vice to be applied for

NJ State Bar No. 027051988

Pro Hac Vice Pending

LENTO LAW GROUP, P.C.

1814 E. Route # 70 – Suite # 321

Cherry Hill, NJ 08003

T: (856) 652-2000 | F: (856) 375-1010

lakatz@lentolawgroup.com

Attorney for Plaintiff